UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

UNITED STATES OF AMERICA

     v.                                                   2:25-cr-00143-cr

THOMAS NDISSI

### Motion to Dismiss

Thomas Ndissi, by Federal Public Defender Alejandro Fernandez, moves to dismiss the indictment and to disqualify Michael P. Drescher and any attorneys working under his supervision from participating in this criminal prosecution. The office of the United States Attorney for the District of Vermont is currently vacant, and Mr. Drescher's performance of the duties and functions of that office violates the Federal Vacancies Reform Act of 1998; Article II, Section 2, Clause 2 of the United States Constitution (herein, the "Appointments Clause"); and the Fifth Amendment's Due Process Clause.

## I.    Factual and legal background

On January 20, 2025, Nikolas Kerest resigned from the position of United States Attorney for the District of Vermont.[1] Before Mr. Kerest's resignation, Mr. Drescher served as the First Assistant. On January 20, 2025, as the First Assistant, Mr.

---

[1] *See United States Attorney Nikolas Kerest Submits Resignation*, U.S. Dep't of Justice (Jan. 6, 2025), https://www.justice.gov/usao-vt/pr/united-states-attorney-nikolas-kerest-submits-resignation.

1

Drescher began serving as the acting U.S. Attorney by default pursuant to 5 U.S.C. § 3345(a)(1).[2] Section 3345(a)(1) reads: "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." By the terms of the FVRA, Mr. Drescher's acting status expired on or about November 16, 2025, 300 days after January 20, 2025, the date of the President's inauguration. 5 U.S.C. §§ 3346(a)(1), 3349a.

On December 4, 2025, Mr. Ndissi was charged in a one-count indictment with attempting to entice a minor. (Doc. 14). Notably, the indictment was filed after the expiration of Mr. Drescher's term as acting United States Attorney. As such, the indictment was signed by Mr. Drescher as First Assistant United States Attorney, Jonathan A. Ophardt as Chief of the Criminal Division, and Katherine Flynn as Assistant United States Attorney. (Doc. 14). Nobody claiming to occupy the seat of the chief prosecutor for the District of Vermont signed the indictment. This was a break from tradition.

Mr. Drescher's switch from Acting United States Attorney back to First Assistant United States Attorney happened quietly. But what it signaled was powerful. The position of the United States Attorney for the District of Vermont had fallen

---

[2] *See First Assistant United States Attorney Michael P. Drescher,* U.S. Dep't of Justice, https://www.justice.gov/usao-vt/meet-us-attorney.

vacant. The constitutional questions about what a United States attorney's office may do without a lead officer to head the office surfaced. Mr. Ndissi's case asks this Court to wade into the waters of this welling constitutional moment.

Entering this issue means starting from the beginning. It means appreciating the fragile democratic framework that is in place, but that is threatened if we were to ignore the issue as a mere technicality. It is not a small point; the Constitution requires that the President obtain "the Advice and Consent of the Senate" before appointing "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. The Appointments Clause is part of the checks and balances built into the Constitution. In *Federalist* No. 76, Alexander Hamilton explained:

> To what purpose then require the co-operation of the Senate? I answer, that the necessity of their concurrence would have a powerful, though, in general, a silent operation. It would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to preventing the appointment of unfit characters from State prejudice, from family connection, from personal attachment, or from a view to popularity. In addition to this, it would be an efficacious source of stability in the administration.

A. Hamilton, *The Federalist* No. 76.[3]

Presidential nomination and Senatorial confirmation are the "default manner of appointment" for principal and inferior officers. *United States v. Arthrex, Inc.*, 594 U.S.

---

[3] Available through the Library of Congress online research guides:
https://guides.loc.gov/federalist-papers/text-71-80#s-lg-box-wrapper-25493468.

1, 12 (2021). The office of United States attorney is one such officer, and Congress has mandated that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a).

Congress has recognized that the responsibilities of an office requiring Presidential appointment and Senate confirmation—known as a "PAS" office—"may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *NLRB v. SW General, Inc.*, 580 U.S. 288, 295 (2017). To account for that possibility, Congress has authorized certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation. *See id.* However*,* "[s]uch acting or interim service is permitted, despite the Constitution's Appointments Clause, for a 'limited time, and under special and temporary conditions.'" *United States v. Giraud,* --- F.4th ---, 2025 WL 3439752 at *1 (3d Cir. Dec. 1, 2025) (quoting *United States v. Eaton,* 169 U.S. 331, 343 (1898)).

The Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 *et seq.*, governs such vacancies. Section 3345(a) addresses the situation in which a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." *Id.* § 3345(a). Congress enacted the FVRA "in response to the Executive branch's widespread practice—dating back through several administrations—of appointing temporary designees in contravention of existing law and the Appointments Clause." *Giraud,* 2025 WL 3439752, at *6.

The statute provides several options to fill an open position on an acting basis. The first (and default) option is that the first assistant to the vacant office becomes the acting officer. Under subsection (a)(1), the first assistant in the office "shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1); *see also SW General*, 580 U.S. at 295. As discussed above, that is what happened here.

Beyond that default option, the FVRA and 28 U.S.C. § 546 offer other avenues for filling U.S. attorney vacancies, but those options are not relevant here because neither the President, nor the Attorney General has appointed any official as acting or interim U.S. attorney under 5 U.S.C. § 3345(a)(2) or 28 U.S.C. § 546.

The FVRA establishes comprehensive time limits on acting service. In most cases, the statute permits acting service for "210 days beginning on the date the vacancy occurs"; tolls that time limit while a nomination is pending; and starts a new 210-day clock if the nomination is "rejected . . ., withdrawn, or returned." 5 U.S.C. §§ 3346(a)-(b)(1).[4] For vacancies that occur during a Presidential transition, as did this one, the 210-day period is "deemed to begin" either (1) "90 days after such transitional inauguration day;" or (2) "90 days after the date on which the vacancy occurs," whichever is later. *Id.* § 3349a.

---

[4] Upon a second nomination, the time limit tolls once more, and an acting officer can serve an additional 210 days if the second nomination proves unsuccessful. *Id.* § 3346(b)(2).

5

The elaborate structure of clear time limits is buttressed by an exclusivity clause, a mechanism to ensure strict compliance. The FVRA specifies that it will be the exclusive means of temporarily authorizing an official to perform the duties of a PAS office:

> Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate.

*Id.* § 3347(a).

There is an exception to this exclusivity clause if some other "statutory provision expressly . . . authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." *Id.* § 3347(a)(1)(A). But the FVRA specifies that a general vesting or delegation provision is insufficient to reach the exception. It reads, "[a]ny statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency" is not a statutory provision that falls within the exception to the FVRA's exclusivity provision. *Id.* § 3347(b). "In other words, general vesting and delegation statutes cannot be used to 'temporarily authoriz[e] an acting official to perform the functions and duties' of a PAS office." *Giraud*, 2025 WL 3439752 at *2 (quoting 5 U.S.C.

§ 3347(a)).

The effect of falling outside of the FVRA's clear mandates are stark: "any function or duty of a vacant office" performed by a person who is not properly serving under the statute "shall have no force or effect." *Id.* § 3348(d)(1). That is, "actions taken in violation of the FVRA are void *ab initio.*" *SW General*, 580 U.S. at 296 n.2. Moreover, such actions cannot be subsequently ratified. 5 U.S.C. § 3348(d)(2). Although the FVRA enumerates positions that are not subject to this stringent penalty, the Department of Justice and U.S. attorneys are not listed.

At issue in *United States v. Giraud*, was the question of whether the Attorney General could delegate its authority directly, thereby avoiding the exclusivity provision of the FVRA. There, the Third Circuit decided that the FVRA precluded Alina Habba from lawfully serving as the acting U.S. Attorney for the District of New Jersey. 2025 WL 3439752 at *12. The Court rejected the government's argument that Ms. Habba could nonetheless exercise prosecutorial and supervisory authority pursuant to the Attorney General's "delegation of authority to her in her capacity as Special Attorney and First Assistant U.S. Attorney." *Id.* at *8. The Court held that the government's delegation theory was "directly contrary to the exclusivity provision of the FVRA." *Id.* Accordingly, the Court affirmed the district court's order disqualifying Ms. Habba and her supervisees from participating in the prosecution of the individual defendants in that case. *Id.* at *12.

II.     **Mr. Drescher cannot exercise the functions and duties of the office of the United States Attorney for the District of Vermont.**

The office of U.S. Attorney for the District of Vermont is empty, but its powers are being wielded by the First Assistant, Michael P. Drescher, who has not been nominated by the President and confirmed by the Senate. Following Nikolas Kerest's resignation on January 20, 2025, then-First Assistant Michael Drescher began serving as the acting U.S. Attorney for the District of Vermont.[5] That was proper. Pursuant to the FVRA's time limits, however, Mr. Drescher's acting status expired 300 days later, on November 16, 2025. 5 U.S.C. §§ 3346(a)(1), 3349a. When the President failed to submit a nomination for the position by November 17, 2025, the office of the Unites States Attorney for the District of Vermont became vacant.[6]

As demonstrated by the instant indictment, once the office became vacant, Mr. Drescher reverted back to his former title of First Assistant. In all functional respects, however, he maintained his role as the acting United States Attorney for the district of Vermont. As already discussed, this violates the FVRA, as well as the Appointments Clause, and the Fifth Amendment's Due Process Clause.

All actions now flowing from that unrecognized position are void. To repeat,

---

[5] *See First Assistant United States Attorney Michael P. Drescher,* U.S. Dep't of Justice, https://www.justice.gov/usao-vt/meet-us-attorney.

[6] *See U.S. Attorneys Listing,* U.S. Dep't of Justice, https://www.justice.gov/usao/us-attorneys-listing (listing District of Vermont as "vacant").

the FVRA says "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect," *id.* § 3348(d)(1); that is to say, "actions taken in violation of the FVRA are void *ab initio*," *SW General*, 580 U.S. at 296 n.2. Given the clear language of the FVRA, the appropriate remedy for the instant indictment is dismissal. Absent dismissal, the Court should disqualify Mr. Drescher and his supervisees from continuing to participate in this prosecution.

### A.    The continued exercise of power violates the FVRA.

When Mr. Drescher's time as acting U.S. Attorney expired under the FVRA, Mr. Drescher began using the title "First Assistant United States Attorney" below his name on indictments and other case-related documents. (Doc. 14). This change was recognized formally. The Department of Justice's webpage for the District of Vermont indicates that Mr. Drescher "has led the office since January 20, 2025, first as Acting United States Attorney under the Federal Vacancies Reform Act, and presently as First Assistant United States Attorney."[7]

Despite the shift in title, Mr. Drescher has continued to exercise the functions and duties of the U.S. Attorney, including the investigation, initiation, and prosecution of criminal cases as he had when he was properly the acting officer. Mr. Drescher's exercise of these powers as a *de facto* U.S. attorney violates the FVRA.

---

[7] *See First Assistant United States Attorney Michael P. Drescher,* U.S. Dep't of Justice, https://www.justice.gov/usao-vt/meet-us-attorney.

In several cases the government has argued that unconfirmed officials like Mr. Drescher can lead the office of the U.S. attorney by direct delegation. For example, in *Giraud*, "[t]he Government contend[ed] that, even if Habba is not the Acting U.S. Attorney under the FVRA, she nonetheless 'may continue to exercise prosecutorial and supervisory authority . . . pursuant to the Attorney General's express delegation of authority to her in her capacity as Special Attorney and First Assistant U.S. Attorney.'" 2025 WL 3439752 at *8 (3d Cir.). But as noted above, this reasoning has been rejected.

The central problem with such an argument is that it "runs headlong into the exclusivity provisions of the FVRA." *United States v. Garcia*, No. 25-227, 2025 WL 2784640, at *11 (D. Nev. Sept. 30, 2025), *appeal pending*, No. 25-6468 (9th Cir.). The Third Circuit rejected this argument when it observed that "This de facto U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision." *Giraud*, 2025 WL 3439752 at *9. It also raises a factual question about whether a delegation was ever indeed made—evidence of such a delegation is not apparent.

The exceptions to the exclusivity provision of the FVRA bears some scrutiny. Section 3347(a)(2) provides an exception for recess appointments made by the President and § 3347(a)(1) provides an exception for statutes that "expressly"

(A) authorize[] the President, a court, or the head of an Executive

10

department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or (B) designate[] an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity.

*Id.* § 3347(a)(1).

Moreover, as already noted, the exception does not apply to general delegation statutes. Congress specified in § 3347(b) that "[a]ny statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies." It is this exclusivity provision—in combination with its narrow exceptions and the clear statement that general delegation authority does not satisfy the exception—that most deeply undermines the government's position. For example, the Third Circuit recently observed that:

> The vesting and delegation statutes in 28 U.S.C. §§ 509 and 510 are 'statutory provision[s] providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency,' and so they do not overcome the FVRA's exclusivity provision. Under the Government's delegation theory, Habba may avoid the gauntlet of presidential appointment and Senate confirmation and serve as the de facto U.S. Attorney indefinitely. This view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546.

11

*Giraud*, 2025 WL 3439752 at *9 (citations omitted). There are still other problems with the delegation arguments.

Beyond the FVRA's text, exercising the U.S. attorney's duties and functions by a non-appointed individual is inconsistent with the FVRA's purpose and its history. The Supreme Court has observed that the FVRA was enacted because Congress "perceive[ed] a threat to the Senate's advice and consent power":

> By 1998, approximately 20 percent of PAS offices in executive agencies were occupied by 'temporary designees, most of whom had served beyond the 120–day limitation period . . . without presidential submissions of nominations.' These acting officers filled high-level positions, sometimes in obvious contravention of the Senate's wishes. One, for instance, was brought in from outside Government to serve as Acting Assistant Attorney General for the Civil Rights Division of the Justice Department, immediately after the Senate refused to confirm him for that very office. Perceiving a threat to the Senate's advice and consent power, Congress acted again. In 1998, it replaced the Vacancies Act with the FVRA.

*SW General*, 580 U.S. at 295 (internal citations omitted).

The FVRA's exclusivity provision specifically aimed to foreclose arguments "raised by the Justice Department that sections 28 U.S.C. §§ 509 and 510, rather than the Vacancies Act, apply to vacancies in that department." S. Rep. No. 105-250, at 17. Allowing a First Assistant to indefinitely act as a *de facto* U.S. Attorney would countenance exactly the type of circumvention that prompted the FVRA's enactment. *See United States v. Giraud*, 2025 WL 2416737, at *22 (D.N.J. 2025)("The FVRA's exclusivity provision was enacted for the *express purpose* of precluding the *exact argument*

that the Government presses here.")(emphasis in the original), *affirmed*, 2025 WL 3439752 at *11 (3d Cir.)("This delegation theory would create a means for the Department of Justice to circumvent the FVRA's exclusivity provision, effectively permitting anyone to fill the U.S. Attorney role indefinitely. This should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute."). The violation of the FVRA is clear and the Court must reject an interpretation of the FVRA that would permit the Executive branch to avoid subjecting PAS offices to Senate approval.

###  B.    The continued exercise of power violates the Appointments Clause.

The Appointments Clause vests the President with the authority to appoint "Officers of the United States" "by and with the Advice and Consent of the Senate." U.S. Const. art II, § 2, cl. II. Presidential nomination and Senatorial confirmation are the "default manner of appointment" for principal and inferior officers. *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021). The Senate's advice-and-consent power is a core "structural safeguard[] of the constitutional scheme." *Edmond v. United States,* 520 U.S. 651, 659 (1997). The Framers deliberately divided the appointment power between the Executive and Legislative branches to guard against presidential favoritism, "prevent the appointment of unfit characters," and promote administrative stability. *SW General, Inc.*, 580 U.S. at 293 (citing *The Federalist* No. 76, at 457 (Alexander Hamilton) (C. Rossiter ed., 1961)).

The Appointments Clause provides only one exception: it allows Congress to dispense with PAS process for inferior officers. *See id.* Specifically, the Clause authorizes Congress "by Law" to "vest the Appointment of such inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The result is that a department head like the Attorney General cannot appoint a non-confirmed inferior officer unless Congress has passed a law vesting her with that authority to do so. The only statute that authorizes such an appointment is 28 U.S.C. § 546, but that statute expressly limits the appointment to 120 days and has not been invoked by the Attorney General.

The government's practice here—allowing a first assistant to wield the powers of the U.S. Attorney in perpetuity—violates the Appointments Clause. Mr. Drescher is acting, at a minimum, as an inferior officer. In the Department of Justice's words, he is "leading the office" of the District of Vermont.[8] As the office head he authorizes and directs criminal prosecutions, and he is the primary signatory on case-related documents. *See* U.S. Dep't of Just., Just. Manual § 9-2.001 (listing powers and responsibilities of U.S. Attorney, including "[i]nvestigating suspected or alleged offenses," "[d]eclining prosecution," "[a]uthorizing prosecution," and "[d]etermining the manner of prosecuting and

---

[8] *See First Assistant United States Attorney Michael P. Drescher,* U.S. Dep't of Justice, https://www.justice.gov/usao-vt/meet-us-attorney.

14

deciding trial related questions"). Indeed, with the United States Attorney position vacant, Mr. Drescher is exercising the powers of the office. In his present capacity, he is doing what he did in his prior "acting" capacity. And in his First Assistant role, his authority is apparently continuing and indefinite—not occasional or case by case. *See Lucia v. SEC,* 585 U.S. 237, 245 (2018).

Accordingly—regardless of the title he uses—Mr. Drescher must either be appointed by the President and confirmed by the Senate or be appointed to a position authorized "by law" in order to exercise the functions and duties of an inferior officer. Neither of these have happened. In the legally novel space in which the United States Attorney's office now operates, Mr. Drescher's officer-level powers are not constitutionally bestowed. *See Lucia,* 585 U.S. 237, 251 (2018); *cf. Trump v. United States,* 603 U.S. 593, 650 (2024) (Thomas, J., concurring) ("Given that the Special Counsel purports to wield the Executive Branch's power to prosecute, the consequences are weighty. Our Constitution's separation of powers, including its separation of the powers to create and fill offices, is the absolutely central guarantee of a just Government and the liberty that it secures for us all.") (internal quotation marks omitted). Actions issued from the constitutionally flawed position, including the instant indictment, must be rejected.

15

C.     **The continued exercise of power violates the Due Process Clause.**

When the Government conducts a prosecution under the authority of an unlawfully appointed officer, the structural defect permeates every stage of the case and violates due process. *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972).

"[T]he Appointments Clause of Article II is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States,* 520 U.S. 651, 659 (1997). Indeed, as was quoted at length earlier by looking at Alexander Hamilton's words in the Federalist Papers, our nation's framers understood the system of checks and balances to depend on it. And though many constitutional arguments threaded with history can feel remote, its relevance to our time is manifest. *See*, *e.g.*, *United States v. Comey*, 2025 WL 3266932 at *2-*3 (E.D. Va. Nov. 24, 2025).

It is clear that the office of United States attorney is a PAS office: Congress requires that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). The authority of that office is also clear: under 28 U.S.C. § 547, the U.S. attorney "shall" "prosecute for all offenses against the United States" within his district. Accordingly, "[t]he United States Attorney, within his/her district, has plenary

authority with regard to federal criminal matters." U.S. Dep't of Just., Just. Manual § 9-2.001. The position carries "the broadest discretion in the exercise of such authority." *Id.* "The authority, discretionary power, and responsibilities of the United States Attorney with relation to criminal matters encompass," among other things, "[i]nvestigating suspected or alleged offenses," "[d]eclining prosecution," "[a]uthorizing prosecution," and "[d]etermining the manner of prosecuting and deciding trial related questions." *Id.*

The U.S. Attorney's prosecutorial powers are among the most consequential in the federal justice system. In this case, the head of the prosecution team—Mr. Drescher—is exercising the authority of a U.S. attorney without being one. The ongoing prosecution in this case will involve active, case-specific supervisory decisions by Mr. Drescher—charging determinations, plea negotiations, evidentiary strategies, and trial preparation—all of which depend on the lawful exercise of prosecutorial discretion. Each of us has a due process right to be charged and have our liberty deprived only at the hands of lawful procedures and authorized officials. *Cf. United States v. Slape*, 44 F.4th 356, 361 (5th Cir. 2022) (deciding that "an out-of-term grand jury's indictment is void ab initio—meaning 'null from the beginning,' and therefore without legal effect.") The continued exercise of prosecutorial powers by Mr. Drescher violates Mr. Ndissi's right to due process and must therefore discontinue.

17

**D.**    **The Court should dismiss the indictment, or at a minimum, disqualify Mr. Drescher and his supervisees from participating in this prosecution.**

Because Mr. Drescher is not validly prosecuting Mr. Ndissi, the Court should fashion an appropriate remedy. *See Lucia v. SEC*, 585 U.S. at 251 ("[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." (internal quotations omitted)); *Ryder v. United States,* 515 U.S. 177, 182-83 (1995) ("We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments."). The appropriate remedy is dismissal of the indictment. *Comey*, 2025 WL 3266932 at *14 (E.D. Va.); *United States v. Trump*, 740 F. Supp. 3d 1245, 1302–04 (S.D. Fla. 2024) (concluding the appropriate remedy for an invalidly appointed prosecutor is to dismiss the indictment); *Lucia*, 585 U.S. at 251 n.5 (explaining that "Appointments Clause remedies are designed not only to advance [structural] purposes directly, but also to create incentives to raise Appointments Clause challenges").

The FVRA makes it clear that actions taken in violation of the FVRA "shall have no force or effect." 5 U.S.C. § 3548(d)(1). To repeat, "actions taken in violation

18

of the FVRA are void *ab initio.*" *SW General*, 580 U.S. at 296 n.2. Moreover, such actions cannot later be ratified. 5 U.S.C. § 3348(d)(2). No remedy other than dismissal is consistent with the FVRA. Permitting a prosecution to continue in any form would sanction an indictment approved and obtained in violation of the FVRA and the Appointments Clause. It would also write out of existence the FVRA's most powerful penalties. Without § 3348's penalty provision, the restrictions and time limits imposed by Congress are illusory.

Some courts have declined to dismiss indictments under § 3348(d). In *United States v. Ramirez*, for instance, the court concluded that dismissal was not required because "Assistant United States Attorneys derive their power to prosecute directly from the Attorney General, not from a United States Attorney." 2025 WL 3019248 at *14 (C.D. Cal. Oct. 28, 2025). As noted above, that reasoning was rejected by the Third Circuit in *Giraud*. But even if dismissal is not required under the FVRA, it is still appropriate under the Appointments Clause and the Due Process clause.

In *Comey*, the court explained that:

> When an appointment violates the Appointments Clause from the jump, the actor has 'exercise[d] power that [she] did not lawfully possess.' In such a case, 'the proper remedy is invalidation of the ultra vires action[s]' taken by the actor. Invalidation 'follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough.'

2025 WL 3266932 at *11 (alterations in original, internal citations omitted).

19

If the Court concludes dismissal of the indictment is not appropriate, the Court should at a minimum disqualify Mr. Drescher from participation in or supervision of this case. *See Giraud*, 2025 WL at \*12 (3d Cir.); *Giraud*, 2025 WL 2416737 at \*30 (D.N.J.); *Garcia*, 2025 WL 2784640, at \*18. The Court should also disqualify any attorneys acting under his direction. *See Giraud*, 2025 WL 2416737, at \*30 ("I disqualify Ms. Habba from engaging in the prosecutions of the [the defendants], and from supervising the same. Any Assistant United States Attorney who prosecutes the [defendants] under the supervision or authority of Ms. Habba in violation of my Order is similarly subject to disqualification."); *Garcia*, 2025 WL 2784640, at \*18 ("Ms. Chattah is disqualified from supervising these cases or any attorneys in the handling of these cases.").

Criminal defendants in this district, including Mr. Ndissi, "face imminent threat of [Mr. Drescher] taking action against them," even though he "is not lawfully holding the office of United States Attorney." *Giraud*, 2025 WL 2416737 at \*27. "In this posture, the only sure solution for the defendants' timely challenge . . . is to bar [him] from taking such actions in the first place." *Id.*; *see also Bullock v. U.S. Bureau of Land Mgmt.,* 489 F. Supp. 3d 1112, 1130–31 (D. Mont. 2020) (enjoining continued unlawful action and delegations by BLM director serving in violation of the FVRA). The proceedings in this case should then be stayed until a proper acting, interim, or permanent U.S. attorney is serving in this district.

20

Barring Mr. Drescher's continued prosecution of this case is not an unduly harsh result. Congress has provided numerous options for temporarily wielding the powers of a U.S. attorney. *See* 5 U.S.C. § 3345(a); 28 U.S.C. § 546. The Constitution gives the executive a choice: follow one of the alternative paths, or secure confirmation of a U.S. attorney with the advise and consent of the Senate. The solution landed upon is an indefinite third option that does not exist.

Wherefore, the indictment should be dismissed, and Mr. Drescher and his supervisees should be barred from participating in the prosecution of Mr. Ndissi.

Dated: December 15, 2025

By:   */s/ Alejandro Fernandez*
Alejandro Fernandez
Federal Public Defender
District of Vermont
95 Pine Street, Suite 150
Burlington, Vermont 05401
(802) 862-6990
Counsel for Thomas Ndissi