UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 FEB -5 P 4:06

CLERK
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:25-cr-00143-cr-1
)
THOMAS NDISSI, )
Defendant. )

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**
(Doc. 19)

On December 4, 2025, Thomas Ndissi ("Defendant") was charged in a one-count Indictment with knowingly attempting to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity using any facility and means of interstate and foreign commerce in violation of 18 U.S.C. § 2422(b). On December 15, 2025, Defendant moved to dismiss the Indictment alleging that, because Michael P. Drescher's status as Acting United States Attorney had expired, his role in signing the Indictment and prosecuting this case "violate[d] the Federal Vacancies Reform Act of 1998 [('FVRA')]; Article II, Section 2, Clause 2 of the United States Constitution ( . . . the 'Appointments Clause'); and the Fifth Amendment's Due Process Clause." (Doc. 19 at 1.)[1] On January 9, 2026, the government opposed the motion, (Doc. 21), and on January 22, 2026, Defendant filed a reply. (Doc. 22.)

The government is represented by Assistant United States Attorney Katherine H. Flynn. Defendant is represented by Federal Public Defender Alejandro B. Fernandez.

**I.   Factual and Procedural Background.**

   **A.   The Criminal Complaint and Indictment.**

The Complaint that initiated this action alleges that, in the fall of 2025, Eric Clifford of the Hartford Police Department operated in an undercover capacity utilizing a

---

[1] After Defendant filed his motion to dismiss, on January 9, 2026, Mr. Drescher resigned from the United States Attorney's Office.

13-year-old female persona who resided in Vermont ("UC"). Defendant allegedly contacted UC in late September 2025. UC told Defendant she was 13 years old, and thereafter, Defendant allegedly sent sexually explicit messages, pictures, and videos to UC. According to the Complaint, Defendant arranged to meet UC at a Super 8 Motel in White River Junction, Vermont, on November 3, 2025. On the evening of November 3, 2025, Defendant allegedly arrived at the Super 8 Motel while Officer Clifford and other law enforcement officers were waiting for him and he was arrested.

On December 4, 2025, the grand jury returned an Indictment charging Defendant with violating 18 U.S.C. § 2422(b). The Indictment was signed by Michael P. Drescher as the First Assistant United States Attorney ("FAUSA"), Jonathan A. Ophardt as an Assistant United States Attorney ("AUSA") and the Chief of the Criminal Division, and Katherine H. Flynn as an AUSA.

## II.   Conclusions of Law and Analysis.

### A.   Mr. Drescher's Former Status.

On January 20, 2025, Nikolas Kerest resigned from his position as U.S. Attorney for the District of Vermont. At the time, Mr. Drescher was the FAUSA.

Under the exclusivity provision of the FVRA, 5 U.S.C. § 3347, "Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) for which appointment is required to be made by the President, by and with the advice and consent of the Senate ['PAS office'][.]" 5 U.S.C. § 3347(a). 5 U.S.C. § 3345 states:

> (a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—
>
> > (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346[.]

2

5 U.S.C. § 3345(a)(1). On the day that Mr. Kerest resigned, January 20, 2025, Mr. Drescher began serving as Acting U.S. Attorney pursuant to 5 U.S.C. § 3345(a)(1).

5 U.S.C. § 3346 limits the time that an acting officer may serve to "no longer than 210 days beginning on the date the vacancy occurs[.]" 5 U.S.C. § 3346(a)(1). Under 5 U.S.C. § 3349a(b), "[w]ith respect to any vacancy that exists during the [sixty]-day period beginning on a transitional inauguration day, the 210-day period under section 3346 or 3348 shall be deemed to begin on the later of the date occurring— (1) [ninety] days after such transitional inauguration day; or (2) [ninety] days after the date on which the vacancy occurs." U.S.C. § 3349a(b)(1)-(2). President Donald J. Trump was inaugurated on January 20, 2025. As a result, Mr. Drescher's status as Acting U.S. Attorney terminated on November 16, 2025, 300 days after January 20, 2025. Thereafter, Mr. Drescher resumed his status as the FAUSA.

From November 16, 2025, until his retirement on January 9, 2026, Mr. Drescher acted as the FAUSA for the District of Vermont. From November 16, 2025, to the present, the U.S. Attorney position for the District of Vermont has been vacant. On January 11, 2026, the Attorney General appointed Mr. Ophardt the FAUSA for the District of Vermont.

### B.     The Impact of Mr. Drescher's Resignation.

Because Mr. Drescher has since resigned, in his reply, Defendant reframes his arguments as follows: "The sole question is what happened to the authority of the [O]ffice of the [U.S.] [A]ttorney when Mr. Drescher's clearly delineated time as [A]cting [U.S.] Attorney under 5 U.S.C. § 3346 concluded and the office became vacant." (Doc. 22 at 3.)

### C.     Whether the Indictment Violates the FVRA or Appointments Clause.

The Appointments Clause vests the President with the authority to appoint "Officers of the United States" "by and with the Advice and Consent of the Senate[.]" U.S. Const. art II, § 2, cl. 2. For the appointment of inferior officers, "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* As inferior officers, 28

3

U.S.C. § 542(a) authorizes "[t]he Attorney General [to] appoint one or more [AUSAs] in any district when the public interest so requires." 28 U.S.C. § 509 provides that, generally, "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General[.]"

In 2002, the Attorney General appointed Mr. Drescher as an AUSA, and he was appointed the FAUSA in 2023. The Attorney General appointed Mr. Ophardt as an AUSA in 2015 and on or about January 11, 2026, appointed him the FAUSA.

Under the FVRA, "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect[]" and such action "may not be ratified." 5 U.S.C. § 3348(d)(1)-(2). Action means "any agency action[,]" and function or duty means "any function or duty of the applicable office that" "(i) is established by statute; *and (ii) is required by statute to be performed by the applicable officer (and only that officer)*[]" or "(I) is established by regulation; *and (II) is required by such regulation to be performed by the applicable officer (and only that officer)*[.]" 5 U.S.C. § 3348(a)(2) (emphasis supplied).

Defendant does not contest, nor could he, the constitutionality of Mr. Drescher's appointments as an AUSA, FAUSA, or Acting U.S. Attorney. Instead, Defendant argues that Mr. Drescher violated the Appointments Clause because, after his term as Acting U.S. Attorney expired, he continued to "wield the powers of the U.S. Attorney in perpetuity" by "'leading the office' of the District of Vermont[,]" "authoriz[ing] and direct[ing] criminal prosecutions," and acting as "the primary signatory on case-related documents.'" (Doc. 19 at 14.) Correspondingly, Defendant argues that Mr. Drescher violated the FVRA because, although Mr. Drescher resumed his status as the FAUSA, he "continued to exercise the functions and duties of the U.S. Attorney, including the investigation, initiation, and prosecution of criminal cases[,] as he had when he was properly the acting officer." *Id.* at 9.

4

In interpreting the meaning of "any function or duty" under 5 U.S.C. § 3348(d), the Third Circuit has held, "[t]he statutory language is unambiguous: the [FVRA] applies only to functions and duties that a Presidentially appointed and Senate-confirmed officer alone is permitted by statute . . . to perform. It does not apply to delegable functions and duties." *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022) (alterations adopted) (quoting *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022)). The Ninth Circuit has similarly found that "[a] 'function or duty' under § 3348 must be exclusive to the officer, or nondelegable, based on the plain and unambiguous meaning of the parenthetical modifier 'and only that officer.'" *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1074 (9th Cir. 2024).

As a threshold matter, Defendant identifies no nondelegable duty that Mr. Drescher performed in relation to the Indictment. In arguing that Mr. Drescher unlawfully exercised the functions and duties of the Office of the U.S. Attorney for the District of Vermont, Defendant relies on *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025). There, Alina Habba assumed the position of Acting U.S. Attorney for the District of New Jersey when it became vacant. Ms. Habba claimed she was validly exercising authority as Acting U.S. Attorney pursuant to 5 U.S.C. § 3345(a)(1) because she was appointed the FAUSA and "pursuant to the Attorney General's express delegation of authority to her in her capacity as Special Attorney and [FAUSA]." *Id.* at 402-03 (internal quotation marks and citation omitted). The court found that Ms. Habba could not lawfully exercise authority as Acting U.S. Attorney, explaining:

> [Ms.] Habba is not the Acting U.S. Attorney for the District of New Jersey by virtue of her appointment as [FAUSA] because only the [FAUSA] in place at the time the vacancy arises automatically assumes the functions and duties of the office under the FVRA. Additionally, because [Ms.] Habba was nominated for the vacant U.S. Attorney position, the FVRA's nomination bar prevents her from assuming the role of Acting U.S. Attorney. Finally, the Attorney General's delegation of all the powers of a U.S. Attorney to Habba is prohibited by the FVRA's exclusivity provision.

5

*Id.* at 406-07. Although the Third Circuit disqualified Ms. Habba from the defendants' prosecutions, it did not address whether AUSAs acting under her authority needed to be disqualified.

*In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, --- F. Supp. 3d. ----, 2026 WL 60793 (N.D.N.Y. Jan. 8, 2026) is instructive. There, the Attorney General appointed John A. Sarcone III to serve as the Interim U.S. Attorney for the Northern District of New York ("NDNY"), and after his appointment expired, Mr. Sarcone claimed "(1) he had been appointed as a 'Special Attorney' under 28 U.S.C. § 515; (2) he had been designated as the '[FAUSA]' for the NDNY and (3) by operation of the FVRA, he was 'now serving as Acting U.S. Attorney for the [NDNY] indefinitely.'" *Id.* at *2. The court found that Mr. Sarcone's designation as Acting U.S. Attorney violated the FVRA because "§ 3345(a)(1) designates whomever is [FAUSA] when the vacancy first arose to the position" and Mr. Sarcone "was not the [FAUSA] when the vacancy first arose." *Id.* at *9. The court further found that the Attorney General could not use her delegation authority "to create a de facto U.S. Attorney with 'the full panoply of the office's powers[.]'" *Id.* at *10 (alteration adopted). In so deciding, the court reasoned that the Attorney General's "delegation purports to authorize Mr. Sarcone to conduct any proceedings that U.S. Attorneys may conduct" rather than "specific, nonexclusive duties[,]" and was, therefore, "an attempt to use general delegation to create an Acting U.S. Attorney outside the FVRA's statutory framework." *Id.* at *9. As a result, the court held "Mr. Sarcone [was] not lawfully serving as Acting U.S. Attorney[]" and quashed subpoenas issued under his authority in that capacity because "[a]ny of his past or future acts taken in that capacity are void or voidable as they would rest on authority Mr. Sarcone does not lawfully have." *Id.* at *10.

*Giraud* and *In re Grand Jury Subpoenas* are easily distinguishable from the instant case. Both involved whether the challenged individuals could act as the U.S. Attorney with the full panoply of powers of that office. Here, the sole question is whether an indictment signed by three AUSAs must be dismissed if there is no appointed U.S. Attorney, one of the signatory's status as Acting U.S. Attorney has expired, and the U.S.

6

Attorney's office is vacant. No court has held that all investigations and prosecutions must cease in those circumstances. To the contrary, it is well established that a vacancy does not halt the affairs of a U.S. Attorney's office and AUSAs can continue to investigate and prosecute crimes and sign indictments returned by grand juries.

For example, in *United States v. Ramirez*, --- F. Supp. 3d ----, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025), *reconsideration denied,* 2025 WL 3852786 (C.D. Cal. Dec. 12, 2025), the defendants argued that Bilal A. Essayli was unlawfully serving as Acting U.S. Attorney for the Central District of California, rendering his actions and the actions of those he was supervising without force and effect under the FVRA. The court found that Mr. Essayli was unlawfully serving as Acting U.S. Attorney, but held that the FVRA did not provide a basis to invalidate the defendants' indictments. In so holding, the *Ramirez* court reasoned:

> § 3348(d)(1)'s "no force or effect" directive is narrowly cabined. Under subsection (d)(1), even if a person was improperly appointed and thus was "not acting under section 3345, 3346, or 3347," only *that* person's "performance of any function or duty" of the office has "no force or effect."
>
> \*\*\*
>
> The Ninth Circuit agreed with other Circuits that interpreted "function or duty" for purposes of § 3348 to mean *nondelegable* functions or duties.
>
> \*\*\*
>
> By the same logic, it follows that so long as an improperly appointed person was performing delegable duties, the actions would not be subject to the "no force and effect" directive in § 3348(d)(1). Effectively, § 3348(d)(1) reads "an action taken by any person who is not acting under section 3345, 3346, or 3347 of the FVRA . . . in the performance of any *nondelegable* function or duty of a vacant office to which the FVRA's provisions apply shall have no force or effect." That is, actions that are delegable are not nullified. Only the performances of nondelegable duties are "of no force and effect."
>
> And here, the [defendants'] indictments did not result from duties or functions that *only* [Mr.] Essayli could have performed; they were obtained by AUSAs after presentment to a grand jury, and signed by AUSAs . . . exercising powers delegated from the Attorney General. Further, approving or authorizing the [defendants'] indictments in August of 2025 are acts that can be performed by others and are delegable duties.

7

*Id.* at \*13-14 (alterations adopted) (second, third, and fourth emphasis in original) (internal citations omitted).

*Ramirez* is directly on point. Investigating, initiating, and prosecuting criminal cases are tasks that FAUSAs and AUSAs are entitled to perform; they are not nondelegable "function[s] or dut[ies]" that only the U.S. Attorney for the District of Vermont is authorized to perform under 5 U.S.C. § 3348(d)(1). Defendant's Indictment therefore "did not result from duties or functions that only [Mr. Drescher] could have performed [as Acting U.S. Attorney]; they were obtained by AUSAs after presentment to a grand jury, and signed by AUSAs . . . exercising powers delegated from the Attorney General." *Ramirez*, 2025 WL 3019248 at \*14 (emphasis omitted). Every court that has considered this issue has reached this same conclusion.[2] As one court explained almost twenty years ago:

---

[2] *See United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000) ("AUSAs are themselves representatives of the government. Because they are appointed directly by the Attorney General, their ability to act does not hinge on the authority of the local [U.S.] Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party.") (internal citations omitted); *United States v. Sommerstedt*, 752 F.2d 1494, 1497 (9th Cir. 1985) ("An [AUSA] is responsible for prosecuting persons accused of federal offenses."), *amended*, 760 F.2d 999 (9th Cir. 1985); *United States v. Donnell*, 557 F. App'x 335, 337 (5th Cir. 2014) (finding the AUSA had authority to prosecute defendant because "[AUSAs] are appointed by the Attorney General to aid the [U.S.] Attorney in carrying out his [or her] duties[]"); *United States v. Garcia*, 2025 WL 2784640, at \*15 (D. Nev. Sept. 30, 2025) ("Defendants are correct that the U.S. Attorney has a duty to prosecute offenses against the United States within [his or] her district. But the power to prosecute is not exclusive to the U.S. Attorney. [AUSAs] also have the power to prosecute offenses against the United States, and their power derives not from the U.S. Attorney but from the Attorney General.") (internal citations omitted); *United States v. Erickson*, 2024 WL 81290, at \*10 n.23 (D.V.I. Jan. 8, 2024) ("[AUSAs] do not derive their power to prosecute from the [U.S.] Attorney but, instead, from the Attorney General. Accordingly, an [AUSA] has an independent power to prosecute absent authorization by the [U.S.] Attorney.") (internal citations omitted); *Fowlers v. U.S. Dep't of Just.*, 2012 WL 518357, at \*7 (D. Haw. Feb. 15, 2012) ("[T]he law is clear that [d]efendants, as federal prosecutors under the employ of the [U.S.] Attorney's Office for the District of Hawaii, are authorized to initiate and conduct criminal investigations and grand jury proceedings.") (citations omitted); *United States v. Moreau*, 2008 WL 4104131, at \*11 (D.N.M. Apr. 3, 2008) ("[I]n the event of a vacancy in the office of the [U.S.] Attorney, [AUSAs] retain prosecutorial authority, as originally delegated to them by the Attorney General, subject to the supervision of the Attorney General and the Department of Justice.").

8

> [AUSAs] derive their power to prosecute directly from the Attorney General, not from a [U.S.] Attorney. While [U.S.] Attorneys supervise and direct the [AUSAs] assigned to their offices, it does not follow that [AUSAs] lack the power to prosecute in the absence of a duly[]appointed [U.S.] Attorney. Indeed, in the event of a vacancy in the office of the [U.S.] Attorney, [AUSAs] retain prosecutorial authority, as originally delegated to them by the Attorney General, subject to the supervision of the Attorney General and the Department of Justice.

*United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008).

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 1(b), "[a]ttorney for the government" includes "a [U.S.] [A]ttorney or an authorized assistant" and "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1)(B), (D) (internal quotation marks omitted). The advisory committee notes explain that "[t]he term 'attorney for the government' contemplates an attorney of record in the case." Advisory Committee Notes, 2002 Amendment, Fed. R. Crim. P. 1(b).

"The principal purpose behind having a government attorney sign the 'indictment is to indicate that he [or she] joins with the [g]rand [j]ury in instituting a criminal proceeding' — absent 'his [or her] agreement[,] no criminal proceeding could be brought on the indictment.'" *Kelley v. United States*, 989 F.3d 67, 69 (1st Cir. 2021) (citing *United States v. Wright*, 365 F.2d 135, 137 (7th Cir. 1966)); *see also Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975) ("The signing of an indictment is one step in the conduct of a criminal proceeding. Its function is to show that the attorney for the United States joins with the grand jury in instituting the proceeding.") (citation omitted). Courts "ha[ve] long viewed a government lawyer's indictment signing as 'necessary only as evidence of the authenticity of the document[.]'" *Kelley*, 989 F.3d at 70. As a result, a single AUSA's signature satisfies the requirement of Rule 7(c)(1).[3] In the case of Defendant's Indictment, there were three.

---

[3] *See, e.g., United States v. Hunter*, 13 F. Supp. 2d 586, 589 (D. Vt. 1998) (finding there was no "suggestion that AUSA . . . was not authorized to sign the indictment on [U.S. Attorney's]

9

Defendant argues that "[i]n none of the cases cited by the government does a court decide that in the total absence of a [U.S.] [A]ttorney, the signing and filing of indictments can continue unabated." (Doc. 22 at 10.) However, Defendant has standing to challenge only his own Indictment, and this question has been repeatedly addressed. *See United States v. Tafoya*, 541 F. Supp. 2d 1181, 1183-84 (D.N.M. 2008) ("[Q]uestions about the constitutionality of the appointment of a [U.S.] Attorney would not affect the validity of indictments as indictments need only be signed by an attorney for the government.") (alteration adopted) (internal quotation marks and citation omitted), *aff'd*, 557 F.3d 1121 (10th Cir. 2009); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) ("The [c]ourt does not believe the constitutionality of [the U.S. Attorney]'s appointment controls the validity of an indictment."), *aff'd sub nom., United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002); *Baldwin*, 541 F. Supp. 2d at 1214 ("Assuming that the appointment of an [I]nterim [U.S.] Attorney, pursuant to § 546(d)[,]

---

behalf"); *United States v. Easton*, 937 F.2d 160, 161 (5th Cir. 1991) ("[A]n [AUSA] may sign the indictment in place of the [U.S.] Attorney."); *United States v. Walls*, 577 F.2d 690, 696 (9th Cir. 1978) ("Appellant attacks the indictment on grounds that it was signed by an [AUSA] and not by the 'attorney for the government' as required by Fed. R. Crim. P. 7(c)(1). We hold, however, that the signature of the [U.S.] Attorney . . . was not essential and that the signature of an [AUSA] was sufficient[.]"); *Peters v. United States*, 1996 WL 599822, at *2 (6th Cir. 1996) ("It is . . . clear that an indictment is not made defective because it is signed by an [AUSA] rather than the appropriate [U.S.] Attorney.") (citation omitted); *United States v. Nichols*, 1995 WL 493019, at *2 n.2 (4th Cir. 1995) ("[Defendant] contends that his indictment was defective because it was signed by an [AUSA] rather than by the [U.S.] Attorney. This nonjurisdictional claim was waived by his guilty plea[] and is without merit in any case.") (internal citations omitted); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) (stating that Fed. R. Crim. P. 7(c)(1) "specifically provide[s] that a criminal indictment signed by an [AUSA] is valid[]" and "[a] plethora of courts have decided that the signature of a [U.S.] Attorney is not required in order to validate an indictment[]"), *aff'd sub nom., United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002); *United States v. Trevino*, 299 F. App'x 384, 385 (5th Cir. 2008) ("Neither was the indictment defective because it was signed by the [AUSA] rather than the [U.S.] Attorney.") (citation omitted); *United States v. Okoro*, 207 F. Supp. 2d 578, 580 (S.D. Tex. 2002) ("It not only makes sense that the government attorney who presented the [indictment]—and who may prosecute the case—should sign it, but [Rule 7(c)(1)] allows an [AUSA] to do it."); *United States v. Jackson*, 2020 WL 4519952, at *2 (D. Minn. Apr. 30, 2020) ("[AUSA], who signed the indictment, is an attorney for the government given his position as an [AUSA]. Accordingly, Rule 7(c)(1) is satisfied.") (internal citation omitted), *report and recommendation adopted*, 2020 WL 3119039 (D. Minn. June 12, 2020).

violated the Constitution, indictments filed during the tenure of the appointee would still be valid if an authorized [AUSA] signed them.").[4] Even in the district court's decision of *Giraud*, upon which Defendant heavily relies, the court reached this same conclusion. *See United States v. Giraud*, 2025 WL 2196794, at *10 (D.N.J. Aug. 1, 2025) (denying defendants' motions to dismiss because, even if the U.S. Attorney was unlawfully appointed, "[t]he [c]ourt sees no reason why AUSAs acting directly under the delegated authority of [the Attorney General], or possibly another Department of Justice official with sufficient authority to extend [the Attorney General]'s powers to AUSAs in New Jersey, would need to be disqualified[]" from prosecutions); *Giraud*, 160 F.4th at 396 n.2 ("The orders denying the motions to dismiss the indictments in these cases are unreviewable interlocutory orders and are not at issue in this appeal.").

For the reasons stated above, the court finds that Defendant's Indictment does not violate the FVRA, the Appointments Clause, or Fed. R. Crim. P. 7(c)(1).

### D.  Whether the Indictment Violates the Fifth Amendment Due Process Clause.

Defendant claims that the "exercise of prosecutorial powers by Mr. Drescher violate[d] [Defendant]'s right to due process" because "[e]ach of us has a due process right to be charged and have our liberty deprived only at the hands of lawful procedures and authorized officials." (Doc. 19 at 17.) Defendant cites no court that has found a due process violation in the circumstances of this case.

By signing the Indictment, Mr. Drescher, Mr. Ophardt, and Ms. Flynn were lawfully exercising their authority as attorneys for the government duly appointed by the Attorney General to their posts. Defendant has thus received the due process to which he is entitled. *See United States v. Garcia*, 2025 WL 2784640, at *17 (D. Nev. Sept. 30, 2025) ("Defendants have received all the process they are due – they have been charged

---

[4] *Cf. United States v. Comey*, --- F. Supp. 3d. ----, 2025 WL 3266932, at *14 (E.D. Va. Nov. 24, 2025) (dismissing defendant's indictment because it was *solely* signed and presented to the grand jury by an Interim U.S. Attorney whose "appointment violated 28 U.S.C. § 546 and the Appointments Clause"); *United States v. James*, --- F. Supp. 3d. ----, 2025 WL 3266931, at *12 (E.D. Va. Nov. 24, 2025) (same).

11

by a properly constituted grand jury and their indictments have been signed by authorized attorneys for the government.") (citations omitted). Accordingly, the Indictment does not violate Defendant's due process rights.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to dismiss. (Doc. 19.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 5th day of February, 2026.

Christina Reiss, Chief Judge
United States District Court